**E-FILED**
Friday, 01 September, 2006  02:52:49 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JUSTIN HERRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 06-3137 |
| | ) | |
| DAVID FREEMAN, GREGORY SIMS, | ) | |
| ADAM McDOWELL, GLENDA | ) | |
| WORTLEY, DR. AHMED and DR. | ) | |
| LOCKHART, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, GREGORY SIMS, ADAM McDOWELL, and GLENDA WORTLEY, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), state as follows:

### FACTS

Plaintiff, Justin Herrick, is an inmate in the custody of the Illinois Department of Corrections at Taylorville Correctional Center ("Taylorville"). Plaintiff suffered a knee injury in July 2003 while incarcerated at Taylorville. (Compl. at 9.) He was provided treatment by Taylorville medical staff and was seen by Dr. Hughes Lochard on numerous occasions between July 5, 2003 and August 4, 2003. (Compl. at 9-10). There is nothing documented which shows that Plaintiff complained to Defendant Wortley about his knee injury from early-August until December 2003. (Def.'s Ex. A; Wortley Aff. ¶ 7, attached hereto; Plaintiff's medical records, referred to as Ex. 1-9, will be provided upon entry of a HIPAA qualified protective order.) Plaintiff was seen by Dr. Lochard again on December 26, 2003. (Def.'s Ex. A; Wortley Aff. ¶ 6.) In April 2004, Plaintiff complained to Defendant

Wortley about his knee injury.  (Compl. at 12.)  However, Plaintiff did not report to sick call until June 5, 2004, at which time he was seen by Dr. Lochard.  (Def.'s Ex. A; Wortley Aff. ¶ 9.)  Dr. Lochard requested Plaintiff's outside medical records and, on July 6, 2004, referred Plaintiff to Dr. Michael Trice, an Orthopedist, for an outside consultation.  (Compl. at 15).  On September 10, 2004, Plaintiff was admitted to Decatur Memorial Hospital for surgical repair of his anterior cruciate ligament ("ACL").  (Compl. at 17; Def.'s Ex. A; Wortley Aff. ¶ 10.)  Plaintiff returned to Taylorville on September 12, 2004, with a brace provided by the hospital and orders to perform range of motion ("ROM") exercises.  (Def.'s Ex. A; Wortley Aff. ¶ 10.)  Plaintiff was allowed to confer with Dr. Trice on October 14, 2004, (Compl. at 17) and was later seen by a physical therapist at Taylorville, who recommended that Plaintiff begin rehabilitative exercises on his own.  (Def.'s Ex. A; Wortley Aff. ¶ 11).  Plaintiff was also allowed to use a stationary bike at Taylorville that was donated to the facility by Plaintiff's mother.  (Def.'s Ex. A; Wortley Aff. ¶ 11.)  Plaintiff was allowed to confer with Dr. Trice on two separate occasions in December 2004.  (Compl. at 19-20.) The Taylorville Utilization Review consulted with Dr. Trice and supplied Plaintiff with a neoprene brace, which was approved by Dr. Trice.  (Def.'s Ex. A; Wortley Aff. ¶ 12.) A metal brace was not provided because the metal could potentially be used as a weapon. (Def.'s Ex. A; Wortley Aff. ¶ 12.)

On April 28, 2005, Plaintiff completed a grievance form, complaining about the alleged negligence and deliberate indifference of Dr. Lochard and Defendant Wortley concerning Plaintiff's knee injury.  (Def.'s Ex. B, attached hereto.)  Defendant McDowell, a Grievance Officer at Taylorville, investigated Plaintiff's claims and recommended denial of the grievance on May 5, 2005.  (Def.'s Ex. B.)  The Chief Administrative Officer's designee denied Plaintiff's grievance on May 12, 2005.  (Def.'s Ex. B.)  Plaintiff never appealed the denial of relief to the Director (the next step in the grievance process).  (Def.'s

Ex. C; Ford Aff. ¶ 7, attached hereto.)  On June 30, 2006, Plaintiff filed a 42 U.S.C. § 1983 suit, in which he alleges that the Defendants were deliberately indifferent to his medical needs. [Ct. Doc. #1].

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."  Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation and internal quotation omitted)).  The moving party may discharge this burden by "showing . . .  an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250; Matsushita Elec. Indus. Co., 475 U.S. at 587.  In determining whether the nonmovant has identified a "material" issue of fact for trial, "[o]nly dispute[s] that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).

## ARGUMENT

### I. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES BECAUSE HE DID NOT COMPLETE THE ADMINISTRATIVE REVIEW PROCESS.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). One of the PLRA's primary purposes is to "enable prison officials to resolve complaints internally and to limit judicial intervention in the management of state and federal prisons." Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001). The PLRA exhaustion requirement requires proper exhaustion. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006). Therefore, a prisoner must complete the administrative review process according to applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. Id.; see also Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints *and appeals* in the place, and at the time, the prison's administrative rules require") (emphasis added), cert. denied, 537 U.S. 949 (2002). Exhaustion is not left to the discretion of the district court, but instead is mandatory. Woodford, 126 S.Ct. at 2382.

The Illinois Department of Corrections' ("the Department") administrative grievance system is set out in the Illinois Administrative Code ("the Code"). See Ill. Admin. Code tit. 20, § 504.810-850 (2003). Inmates must follow these procedures: (1) The inmate must file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. § 504.810(a). (2) Upon completion of an investigation by the Grievance Officer, the conclusions, and, if necessary, recommendations, are forwarded to the CAO. § 504.830(d). The decision of the CAO, or the CAO's designee, is then submitted to the grieving inmate. (3) If the inmate does not believe the situation is

resolved, he "may appeal in writing to the Director within 30 days after the date of the decision." § 504.850(a). The Administrative Review Board ("ARB") reviews the appeal of the grievance and determines whether a hearing is necessary. § 504.850(b). (4) The ARB then forwards its decision and any recommendations to the Director or other designee, who makes a final determination. § 504.850(f).

Plaintiff failed to exhaust his administrative remedies because he did not appeal the denial of his grievance prior to bringing suit. The Defendants do not dispute that Plaintiff filed a timely and sufficient grievance. (Def.'s Ex. B.) However, Plaintiff did not appeal the denial of his grievance to the Director (the next step in the grievance process). (Def.'s Ex. C; Ford Aff. ¶ 7.) The PLRA serves inmates with notice that they cannot enter federal court until such time as they exhaust the prison grievance process. McCoy v. Gilbert, 270 F.3d 503, 510 (7th Cir. 2001). Plaintiff's failure to appeal impeded the prison administration's opportunity to address his complaint internally before initiation of this federal suit, contrary to one of the primary purposes of the PLRA. See Smith, 255 F.3d at 449. Because Plaintiff failed to exhaust his administrative remedies, the Defendants are entitled to judgment as a matter of law. See Dixon v. Page, 291 F.3d 485, 490 (2002) (dismissal under § 1997e appropriate where inmate did not appeal the dismissal of his grievance to the Director).

## II. THERE IS INSUFFICIENT EVIDENCE TO SHOW THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." Id. at 106; see also Estate

of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1986) (mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amount to deliberate indifference. See Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, prisoners must demonstrate that their medical need is "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Under the subjective component, prisoners must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). In other words, prison officials must act or fail to act despite their knowledge of a substantial risk of serious harm. Jones v. Simek, 193 F.3d 485, 490 (7th Cir. 1999).

The Defendants do not dispute that Plaintiff suffered from an objectively serious medical condition. However, Plaintiff fails to show a genuine issue of material fact concerning the Defendants' alleged failure to effectively treat his knee injury. The undisputed facts show that Plaintiff received medical attention by Taylorville healthcare staff concerning his knee injury. (Compl. at 9, 10, 14, 18, 21). Further, the undisputed facts also show that Plaintiff was allowed to see an Orthopedist on numerous occasions and that Plaintiff had surgery performed on his ACL. (Compl. at 15, 16, 17, 19, 20).

There is no genuine issue of triable fact concerning Defendant Wortley's alleged deliberate indifference to Plaintiff's medical needs.  As the Health Care Unit Administrator at Taylorville, Defendant Wortley is responsible for directing, coordinating, and reviewing activities of the healthcare operations in conjuncture with the Medical Director.  (Def.'s Ex. A; Wortley Aff. ¶ 2.)  Defendant Wortley lacks authority to override the decisions made by the Taylorville medical staff.   (Def.'s Ex. A; Wortley Aff. ¶ 13.)   There is nothing documented which supports Plaintiff's allegation that he complained to Defendant Wortley in October 2003.  (Def.'s Ex. A; Wortley Aff. ¶ 7.)  In fact, Defendant Wortley has not been made aware of any refusal by the medical staff to provide needed treatment to Plaintiff. (Def.'s Ex. A; Wortley Aff. ¶ 13.)

It appears that Plaintiff brings suit against Defendants McDowell and Sims solely because of their alleged failure to respond appropriately to his complaints and to his grievances.   Neither Defendant McDowell nor Defendant Sims are health care professionals.  Typically, prison officials with no medical training are entitled to rely on the treating physician's decisions.   "[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . .".  Greeno, 414 F.3d at 656; see also Bond v. Aguinaldo, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (other citations omitted). Furthermore, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause."  Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  Maust v. Headley, 959 F.2d 644, 648 (7th Cir. 1992); Shango v. Jurich, 681 F.2d 1091 (7th Cir. 1982).

### III.    PLAINTIFF HAS FAILED TO SHOW THE PERSONAL INVOLVEMENT OF DEFENDANT SIMS IN THE ALLEGED VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS.

Defendants in a suit brought pursuant to 42 U.S.C. § 1983 can only be held liable for their individual wrongdoing.  Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of the plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation.  Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).  "Section 1983 will not support a claim based on a *respondeat superior* theory of liability."  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  A supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision.  Duckworth, 780 F.2d at 650. Thus, a supervisory official must be personally involved in the alleged conduct to be liable. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

As Warden of Taylorville, Defendant Sims is responsible for the overall administration of the operations of the facility, including the security of the facility and the delivery of programs and services to the offenders confined in Taylorville.  (Def.'s Ex. D; Sims Aff. ¶ 2, attached hereto.)  Because of the nature and volume of responsibilities, Defendant Sims does not routinely become involved in matters regarding medical care for offenders.  (Def.'s Ex. D; Sims Aff. ¶ 3.)  Defendant Sims relies upon trained medical staff to ensure that the medical needs of inmates are met.  (Def.'s Ex. D; Sims Aff. ¶ 3.) Defendant Sims had no personal involvement in Plaintiff's medical care (Def.'s Ex. D; Sims Aff. ¶ 3)  Plaintiff's grievance was reviewed and denied by the Warden's designee, Julie Hardway-Nickles.   Therefore, Defendant Sims cannot be held liable for the alleged deliberate indifference to Plaintiff's medical needs.

IV.    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW DID NOT PUT THEM ON NOTICE THAT THEIR CONDUCT WOULD BE CLEARLY UNLAWFUL.**

The doctrine of qualified immunity shields government officials from liability for civil damages on account of their performance of discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Knox v. McGinnis, 998 F.2d 1405, 1409 (7th Cir. 1993).  A court required to rule upon qualified immunity of a government official must first determine whether a favorable view of plaintiff's alleged facts show that the official's conduct violated a constitutional right, and, if they have, to determine whether the applicable constitutional standards were clearly established at the time the events took place.  Saucier v. Katz, 533 U.S. 194, 200 (2001); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996).  Qualified immunity can only be claimed by government officials whose conduct complained of was taken under the official's "discretionary," rather than "ministerial," functions.  Harlow, 475 U.S. at 818; Davis v. Scherer, 468 U.S. 183, 196 (1984).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202. Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong.  See Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988); Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Defendants have shown that the treatment of Plaintiff's medical condition does not give rise to an Eighth Amendment violation.  There is nothing showing that they acted or failed to act despite having knowledge of a substantial risk of serious harm.  See Jones,

193 F.3d at 490.   To the extent this Court rules that the mere difference of opinion regarding a patient's appropriate treatment violates 42 U.S.C. § 1983, a ruling against the Defendants would represent an announcement of new law of which the Defendants could not have been aware at the time they took the alleged actions.   Because the law did not put the Defendants on notice that their conduct would be clearly unlawful, the Defendants are entitled to qualified immunity.

## **CONCLUSION**

WHEREFORE, for the above and foregoing reasons, the Defendants respectfully request this Honorable Court to grant their Motion for Summary Judgment.

Respectfully submitted,

GREGORY SIMS, ADAM McDOWELL,
 and GLENDA WORTLEY,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendants,


  s/ Michael J. Lanzdorf
Michael J. Lanzdorf,  #6286675
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2006, I electronically filed a Memorandum of

Law in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court

using the CM/ECF system which will send notification of such filings to the following:

Michael J. Costello / Email: costello.M@sbcglobal.net
Theresa M. Powell / Email: tpowell@hrva.com



Respectfully submitted,


   s/   Michael Lanzdorf
Michael J. Lanzdorf,  #6286675
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

**E-FILED**
Friday, 01 September, 2006 02:53:22 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS )        *Herrick v. Freeman, et al.*
                   )        Case No. 06-3137
COUNTY OF CHRISTIAN )

## AFFIDAVIT

I, **Glenda Wortley**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify, would state as follows:

1.       I am the Health Care Unit Administrator at Taylorville Correctional Center ("Taylorville") and have held this position since August 2000.

2.       As a Health Care Unit Administrator, my job responsibilities are to direct, coordinate and review activities of the healthcare operations in conjuncture with the Medical Director. Because I am not a physician, final medical treatment is with the designated physician. I have no authority to order treatment for any inmate at any time.

3.       I have reviewed the medical issues concerning Inmate Justin Herrick, K91865. I find the following from his medical records:

4.       Inmate Herrick entered the Illinois Department of Corrections on December 5, 2000. The Medical Problem List stated that Inmate Herrick had a right knee ACL surgery in 1995. (Ex. 1.) He requested special gym accommodations on January 19, 2003, due to his 1995 ACL repair. (Ex. 2.)

5.       On July 2, 2003, Inmate Herrick reported to sick call and reported that, on July 1, 2003, he had injured his knee while playing soccer. He was referred to doctor sick call and was seen by Dr. Hughes Lochard for this injury on July 3, 2003. (Ex. 3.) X-rays were obtained on July 5, 2003, and results shared



EXHIBIT
A

with Inmate Herrick on July 9, 2003. (Ex. 4.) He was also provided a neoprene brace.

6.   On August 4, 2003, Inmate Herrick was seen by Dr. Lochard and reported that the knee was better and was instructed to continue wearing the brace and to follow-up as needed.  (Ex. 4.)  Inmate Herrick did not return to Health Care with complaints regarding this injury again until December 22, 2003. He was then seen by Dr. Lochard on December 26, 2003. (Ex. 5.)

7.   There is nothing documented which shows that Inmate Herrick complained to me about Dr. Lochard's treatment of Inmate Herrick's knee injury in October 2003.

8.   In April 2004, I referred Inmate Herrick to see Dr. Lochard concerning his treatment. (Ex. 5.)  Inmate Herrick would not have been told "since the medical review committee was chaired by Dr. Lockhart" or "he never overruled his own decisions." Requests for outside referrals and consultation are reviewed through a utilization process for approval.

9.   Inmate Herrick did not report to sick call for this request until June 5, 2004 and was seen by Dr. Lochard, at which time records for his surgery performed in 1995 were requested. (Ex. 6.)  A referral for outside consultation with Dr. Trice for evaluation was done by Dr. Lochard on July 6, 2004. (Ex. 6.)

10.   Inmate Herrick was approved for an MRI and, subsequently, an ACL repair at Decatur Memorial Hospital. (Ex. 7.)  He was admitted to Decatur Memorial Hospital on September 10, 2004, and returned to Taylorville Correctional Center on September 12, 2004, with a brace provided from the

hospital and orders for ROM exercises. There are numerous entries in the medical record stating that he was doing the exercises. (Ex. 10.)

11.    A physical therapist recommended that Inmate Herrick could start exercises on his own. (Ex. 8.) In addition, a stationary bike was donated to the facility by Mr. Herrick's mother, and he was allowed to use this.

12.    Metal is avoided in Taylorville because it could potentially be used as a weapon. The Utilization Review conferred with Dr. Trice and had a brace approved by him which was supplied to Mr. Herrick. (Ex. 9.)

13.    During Inmate Herrick's incarceration at Taylorville, he has received treatment that was medically indicated. I have no authority to override the decisions made by the medical staff and I am not aware of any refusal by the medical staff to provide needed treatment to Inmate Herrick.

FURTHER AFFIANT SAYETH NOT.

Glenda Wortley
Glenda Wortley

Subscribed and sworn to me this 31st day of August, 2006.

Paula R. McCray
Notary Public

"OFFICIAL SEAL"
Paula R. McCray
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-29-2008

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

| Date: 4/28/05 | Committed Person: (Please Print) Justin Herrick | ID#: K91865 |
|---|---|---|

| Present Facility: Taylorville CC | Facility where grievance issue occurred: Taylorville CC |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☒ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ Other (specify): _____
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report: _____ / _____ / _____
                   Date of Report                Facility where issued

Note:   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

Brief Summary of Grievance: On 7/1/03 I injured my right knee playing soccer. I saw Healthcare and Dr. Lockhart ordered x-rays which were done 7/5/03. Dr. Lockhart told me it was arthritis, ibuprofen and crutches were prescribed. I was on crutches for about 2 weeks and healthcare took them back. I went back to see the doctor on 7/9/03, 7/24/03, 8/4/03, 12/26/03 and complained of severe continuing pain and swelling localized about ACL (anterior cruciate ligament) and the inner ligament (medial meniscus). Ibuprofen was prescribed but I told the doctor the pain was not helped by the ibuprofen (nor was it). In October of 2003 I had complained to Glenda Wortley about Dr. Lockhart's refusal to schedule me for a specialist or for an MRI since my knee was not

Relief Requested: I want compensatory and punitive damages for my permanent disability caused by negligent and/or deliberate indifference medical care and referral for therapy and to the specialist as he orders.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _____ Committed Person's Signature | K91865 ID# | 4 / 28 / 05 Date |
|---|---|---|

(Continue on reverse side if necessary)

---

### Counselor's Response (If applicable)

| Date Received: 5 / 3 / 05 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: Reviewed Grievance. Conferred w/ HCU infirmary staff. Inmate appears to have received adequate medical care including an orthopedic specialist and care associated w/ such. Grievance denied @ this level.

| R Evans, CC II Print Counselor's Name | _____ Counselor's Signature | 5 / 3 / 05 Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

| Date Received: _____ / _____ / _____ | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner. |
|---|---|---|

| _____ Chief Administrative Officer's Signature | _____ / _____ / _____ Date |
|---|---|

EXHIBIT
B

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

healing and it was just like when I had previously injured the same knee. On 4/23/04 I again went to Ms. Wortley complaining of Dr. Lockhart's inaction but she said there was no way to go against the doctor's opinion, since the so-called medical review committee was chaired by the doctor and he "never" overruled his own decisions. On 6/8/04 I again complained to Dr. Lockhart about my failure to heal, the continuing severe pain, the swelling, the pain at night where I could not sleep. I saw him again of 7/1/04 and restated my above complaints. Finally, on 7/6/04 I was referred to orthopedist Dr. Trice of Decatur Memorial Hospital and I had an MRI performed on 7/15/04. I saw Dr. Trice and followed up and he told me I had a torn ACL possible meniniscus damage and ordered me for surgery in September of 2004. Surgery was done on 9/10/04 as above specified and on 10/14/04 I again saw Dr. Trice who prescribed physical therapy. On 11/9/04 I saw the therapist here who recommended that he see once a week for several weeks but I never saw him again. On 12/02/04 I saw Dr. Trice who fitted me for an ACL brace (Briggs -manufacturer). On 12/16/04 I saw DR. Trice again and I was told I could not receive a Briggs ACL brace because it had metal structures in it. In mid-February, after writing to Healthcare about my brace, and I finally received a neoprene brace, not the one recommended by Dr. Trice. On march 11, 2005 I was supposed to have a 26 week checkup by Dr. Trice which I did not. They still have refused to cause me to see the orthopedic specialist, but on 4/17/05 Dr. Ahmed who did a very perfunctory look at my knee and said "it's ok".

The delay in sending me to a specialist was deliberate indifference to my serious medical needs in violation of the 8th Amendment to the U.S. Constitution. In addition, it was negligent for Dr. Lockhart and Glenda Wortley not to send me to a specialist since everyone knows an x-ray does not show the ligaments etc. for a torn ACL/meniscus diagnosis. There is a continuing pattern and practice here at taylorville of delaying and denying inmates proper access to medical care, treatment, and diagnostic testing, physical therapy, and proper rehabilitative bracing. I have suffered a severe loss of the opportunity to recover because of the delay and deliberate attempts to save money by preventing access to healthcare. We all know if it was a C/O or warden who hurt his knee there would not be several months delay in giving an MRI. I am also complaining about the lack of investigation that Ms. Wortley, did not do, when I complained of my knee injury and failure to treat same. I feel I deserve several tens of thousands of compensation for the pain, suffering, and permanent disability. I can never work as a roofer or probably in any labor trade because of my injury. Plus, I have heard Wexford Healthcare has a pattern and practice of delaying treatment for inmates in all prisons where Wexford was used, and the warden must have known this because it was in the newspapers. Now, the same pattern appears for the new provider.

ILLINOIS DEPARTMENT OF CORRECTIONS                    **DOC 0047**

## RESPONSE TO OFFENDER'S GRIEVANCE

### GRIEVANCE OFFICER'S REPORT

Date Received: __05/05/05__          Date of Review: __05/12/05__          Grievance # (Optional): __6345__

Offender: _____Herrick, Justin_____          ID #: __K91865__

**Nature of Grievance:** Offender Herrick is grieving the medical treatment he received concerning a knee injury he sustained in July of 2003. He claims "deliberate indifference" toward medical staff concerning his condition.

**Facts Reviewed:** Contacted Glenda Wortley, HCU Administrator concerning the matter, she stated the following. Offender Herrick received surgery for the repair of his ACL. He also had physical therapy after the surgery and a brace to do exercises. Range of motion is intact and ambulates without assistance. He was last seen on 4/16/05 by the doctor here at the facility and is to have a follow-up at the end of this month (May 05). He has not been to health care at all since he saw the doctor. She states he had a referral, saw an orthopedist, had surgery, had physical therapy and continues to be followed for this issue. She states that there is no negligence and no indifference to his medical issue.

**Recommendations:** Due to information received by HCU Administrator this grievance officer, A. McDowell, recommends denial of the grievance. It is recommended that any further medical conerns of the grievance be addressed via Nurse Sick Call.

_____Adam McDowell CCII_____          __cc II A McDowell   J. McDowell__
Print Grievance Officer's Name                          Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: __5/12/05__          [X] I concur          [ ] I do not concur          [ ] Remand

_____Greg Sims, MD_____          __5/12/05__
Chief Administrative Officer's Signature                          Date

### OFFENDER'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____          _____          _____
Offender's Signature                          ID#                          Date

Distribution: Original to Master File          A/W Operations          Other: _____
CC:          Offender - Date Received __5/12/05__          A/W Programs
                  Warden                                          Inquiry Board                          DOC 0047 (Eff. 3/2005)

STATE OF ILLINOIS        )
                                )

COUNTY OF SANGAMON    )

## AFFIDAVIT

I, MELODY J. FORD, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am a Chairperson with the Office of Inmate Issues for the Illinois Department of Corrections ("the Department") and have held this position since August 1, 2001. I have been employed by the Department in various capacities since June 1993. As an Administrative Review Board ("ARB") Chairperson, my duties involve, among other things, review and respond to grievances filed by Department inmates in the manner set forth herein.

2. Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The Grievance Officer may personally interview the inmate and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the Grievance Officer's conclusions and if appropriate, recommended relief is forwarded to the CAO. The CAO, or CAO's designee's, decision is then submitted to the grieving inmate.

3. If, after receiving the CAO's decision the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate,



EXHIBIT
C

examining relevant documents and at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendations to the Director or Director's designee who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB's files. Department Rule 504F: Grievance Procedures for Committed Person provides no further means for review beyond this step.

4. Certain issues may be grievance directly to the ARB, rather than first through a counselor or grievance officer. These issues include:

   a. Decisions involving the involuntary administration of psychotropic medication;

   b. Decisions regarding protective custody placement, including continued placement in or release from protective custody;

   c. Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and

   d. Other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned.

These grievances are then handled in accordance with the procedures described in paragraph 3 above.

5. An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedure described in paragraph 3 above.

6. The grievance procedure may not be utilized for complaints regarding decisions which are outside the Department's authority such as parole decisions, clemency or orders regarding the length of sentences or decisions which have been reviewed by the Director.

7. At the request of the Attorney General's Office, I have searched the ARB's records in regards to Inmate Justin Herrick, Register number K91865, and found the following: A review of ARB records indicate that Justin Herrick, K91865, did not file a grievance in accordance with departmental rule 504

regarding the medical treatment he received concerning a knee injury sustained in July 2003. Specifically, Justin Herrick, K91865, did not appeal the Chief Administrative Officer's decision concerning his grievance dated April 28, 2005 to the Director.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NOT.**

_Melody J. Ford_

Melody J. Ford

SUBSCRIBED AND SWORN TO

before me this ___30th___ day of August, 2006.

_Mary E. Miller_

NOTARY PUBLIC

> **OFFICIAL SEAL**
> **MARY E. MILLER**
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 10-1-2009

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JUSTIN HERRICK,                    )
                                  )
                    Plaintiff     )
                                  )
          vs.                     )     06-3137
                                  )
DAVID FREEMAN, et al.,            )
                                  )
                    Defendants    )

**A F F I D A V I T**

I, Gregory C. Sims, being first duly sworn upon oath, depose and state that:

1.      I am Warden of the Taylorville Correctional Center and have served in that capacity since February 2, 2004.

2.      As Warden of Taylorville Correctional Center, I am responsible for the overall administration of the operations of the facility, including the security of the facility and the delivery of programs and services to the offenders confined in Taylorville Correctional Center, which is a minimum security facility, housing approximately 1,193 adult offenders convicted of felonies.  Approximately 247 personnel are employed in contract positions, program services, security and administration.

3.      Because of the nature and volume of responsibilities I have as Warden, and the need to respond to institutional needs and emergencies in an expeditious fashion, I do not routinely become involved in matters regarding medical care for offenders.  Accordingly, I rely upon my trained medical staff to ensure medical needs are met.

4.      I had no personal involvement in the medical care of Justin Herrick.

I HAVE READ the foregoing and affirm that the statements contained herein are true to the best of my knowledge.

_____
Greg Sims, Warden

SUBSCRIBED and SWORN to before me
this _10th_ day of _July_____, 2006.

_Paula R. McCray_
NOTARY PUBLIC

```
"OFFICIAL SEAL"
Paula R. McCray
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-29-2008
```

**EXHIBIT**

tabbies

_D_