**E-FILED**
Tuesday, 07 November, 2006 10:17:45 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JUSTIN HERRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 06-3137 |
| | ) | |
| DAVID FREEMAN, GREGORY SIMS, | ) | |
| ADAM McDOWELL, GLENDA | ) | |
| WORTLEY, DR. AHMED and DR. | ) | |
| LOCKHART, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## FREEMAN'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, DAVID FREEMAN, by and through his attorney, Lisa Madigan, Attorney General for the State of Illinois, and for his Memorandum of Law in Support of his Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), states as follows:

## INTRODUCTION

Plaintiff, Justin Herrick, is an inmate in the custody of the Illinois Department of Corrections at Taylorville Correctional Center ("Taylorville").  On June 30, 2006, Plaintiff filed a 42 U.S.C. § 1983 suit, in which he alleges that the Defendants were deliberately indifferent to his medical needs. [Ct. Doc. #1].

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."  Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation and internal quotation omitted)).  The moving party may discharge this burden by "showing . . .  an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250; Matsushita Elec. Indus. Co., 475 U.S. at 587.  In determining whether the nonmovant has identified a "material" issue of fact for trial, "[o]nly dispute[s] that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).

## UNDISPUTED MATERIAL FACTS

1.    Plaintiff suffered a knee injury in July 2003 while incarcerated at Taylorville.  (Compl. at 9.)

2.    Plaintiff was provided treatment by Taylorville medical staff and was seen by Dr. Hughes Lochard on numerous occasions between July 5, 2003, and August 4, 2003.  (Compl. at 9-10).

3.      There is nothing documented which shows that Plaintiff complained to Defendant Wortley about his knee injury from early-August until December 2003. (Wortley Aff. ¶ 7, attached to Memorandum in Support of Defendants' Amended Motion for Summary Judgment.)

4.      Plaintiff was seen by Dr. Lochard again on December 26, 2003. (Wortley Aff. ¶ 6.)

5.      Defendant Freeman served as Warden at Taylorville until February 2004. (Def.'s Ex. A; Freeman Aff. ¶ 1, attached hereto.)

6.      In April 2004, Plaintiff complained to Defendant Wortley about his knee injury. (Compl. at 12.)

7.      Plaintiff did not report to sick call until June 5, 2004, at which time he was seen by Dr. Lochard.  (Wortley Aff. ¶ 9.)

8.      Dr. Lochard requested Plaintiff's outside medical records and, on July 6, 2004, referred Plaintiff to Dr. Michael Trice, an Orthopedist, for an outside consultation. (Compl. at 15.)

9.      On September 10, 2004, Plaintiff was admitted to Decatur Memorial Hospital for surgical repair of his anterior cruciate ligament ("ACL").  (Wortley Aff. ¶ 10.)

10.     Plaintiff returned to Taylorville on September 12, 2004, with a brace provided by the hospital and orders to perform range of motion ("ROM") exercises.  (Wortley Aff. ¶ 10.)

11.     Plaintiff was allowed to confer with Dr. Trice on October 14, 2004, (Compl. at 17) and was later seen by a physical therapist at Taylorville, who recommended that Plaintiff begin rehabilitative exercises on his own.  (Wortley Aff. ¶ 11.)

12.    Plaintiff was also allowed to use a stationary bike at Taylorville that was donated to the facility by Plaintiff's mother.  (Wortley Aff. ¶ 11.)

13.    Plaintiff was allowed to confer with Dr. Trice on two separate occasions in December 2004.  (Compl. at 19-20.)

14.    The Taylorville Utilization Review consulted with Dr. Trice and supplied Plaintiff with a neoprene brace, which was approved by Dr. Trice.  (Wortley Aff. ¶ 12.)

15.    A metal brace was not provided because the metal could potentially be used as a weapon.  (Wortley Aff. ¶ 12.)

16.    Plaintiff did not submit any grievances in accordance with the administrative grievance system regarding the medical treatment he received concerning his knee injury. (Def.'s Ex. B; Ford Aff. ¶ 7, attached hereto.)

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS.

Section 1983 does not contain an express statute of limitations.  The forum state's limitations period for personal injury claims is the applicable rule.  Wilson v. Garcia, 471 U.S. 261, 276 (1985).  "The correct statute of limitations for Section 1983 actions filed in Illinois is two years as set forth in 735 ILCS § 5/13-202."  Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001) (citing Ashafa v. City of Chicago, 146 F.3d 459, 462 (7th Cir. 1998). The statute begins to run when the plaintiff "knows or should know that his or her constitutional rights have been violated."  Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2003).

In order to timely file a Section 1983 claim against Defendant Freeman for alleged deliberate indifference, Plaintiff must have filed his complaint on or before the date he

knew or should have known that his constitutional rights were violated by Defendant Freeman.  Defendant Freeman served as Warden at Taylorville until February 15, 2004. (Def.'s Ex. A; Freeman Aff. ¶ 1.)  However, Plaintiff did not file his Complaint, containing the Section 1983 claims against Defendant Freeman, until June 30, 2006. [Ct. Doc. #1.] Therefore, more than two years had passed between the alleged injuries caused by Defendant Freeman's actions and the filing of the Complaint.  Accordingly, Plaintiff's Complaint is barred by the statute of limitations.

## II.     PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1996). One of the PLRA's primary purposes is to "enable prison officials to resolve complaints internally and to limit judicial intervention in the management of state and federal prisons." Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001).  The PLRA exhaustion requirement requires proper exhaustion.  Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  Therefore, a prisoner must complete the administrative review process according to applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. Id.; see also Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints *and appeals* in the place, and at the time, the prison's administrative rules require") (emphasis added), cert. denied, 537 U.S. 949 (2002). Exhaustion is not left to the discretion of the district court, but instead is mandatory. Woodford, 126 S.Ct. at 2382.

The Illinois Department of Corrections' ("the Department") administrative grievance system is set out in the Illinois Administrative Code ("the Code"). <u>See</u> Ill. Admin. Code tit. 20, § 504.810-850 (2003). Inmates must follow these procedures: (1) The inmate must file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. § 504.810(a). (2) Upon completion of an investigation by the Grievance Officer, the conclusions, and, if necessary, recommendations, are forwarded to the CAO. § 504.830(d). The decision of the CAO, or the CAO's designee, is then submitted to the grieving inmate. (3) If the inmate does not believe the situation is resolved, he "may appeal in writing to the Director within 30 days after the date of the decision." § 504.850(a). The Administrative Review Board ("ARB") reviews the appeal of the grievance and determines whether a hearing is necessary. § 504.850(b). (4) The ARB then forwards its decision and any recommendations to the Director or other designee, who makes a final determination. § 504.850(f).

Plaintiff failed to exhaust his administrative remedies because he did not submit any grievances in accordance with the administrative grievance system regarding the medical treatment he received concerning his knee injury. (Def.'s Ex. B; Ford Aff. ¶ 7.) The PLRA serves inmates with notice that they cannot enter federal court until such time as they exhaust the prison grievance process. <u>McCoy v. Gilbert</u>, 270 F.3d 503, 510 (7th Cir. 2001). Plaintiff's failure to exhaust impeded the prison administration's opportunity to address his complaint internally before initiation of this federal suit, contrary to one of the primary purposes of the PLRA. <u>See</u> <u>Smith</u>, 255 F.3d at 449. Because Plaintiff failed to exhaust his administrative remedies, Defendant Freeman is entitled to judgment as a matter of law.

See <u>Dixon v. Page</u>, 291 F.3d 485, 490 (2002) (dismissal under § 1997e appropriate where inmate did not appeal the dismissal of his grievance to the Director).

### III. THERE IS INSUFFICIENT EVIDENCE TO SHOW THAT DEFENDANT FREEMAN WAS DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." <u>Id.</u> at 106; <u>see</u> <u>also</u> <u>Estate of Cole by Pardue v. Fromm</u>, 94 F.3d 254, 261 (7th Cir. 1986) (mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amount to deliberate indifference. <u>See</u> <u>Estelle</u>, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, prisoners must demonstrate that their medical need is "objectively, sufficiently serious." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005). Under the subjective component, prisoners must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" <u>Farmer</u>, 511 U.S. at 834

(quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  In other words, prison officials must act or fail to act despite their knowledge of a substantial risk of serious harm.  Jones v. Simek, 193 F.3d 485, 490 (7th Cir. 1999).

Plaintiff fails to show a genuine issue of material fact concerning Defendant Freeman's alleged failure to effectively treat Plaintiff's knee injury.  Typically, prison officials with no medical training are entitled to rely on the treating physician's decisions.  "[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . .".  Greeno, 414 F.3d at 656; see also Bond v. Aguinaldo, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (other citations omitted).  The undisputed facts show that Plaintiff received medical attention by Taylorville health care staff concerning his knee injury.  (Compl. at 9, 10, 14, 18, 21).  The undisputed facts also show that Plaintiff was allowed to see an Orthopedist on numerous occasions and that Plaintiff had surgery performed on his ACL.  (Compl. at 15, 16, 17, 19, 20).  In addition, the Health Care Unit Administrator at Taylorville is not aware of any refusal by the medical staff to provide needed treatment to Plaintiff.  (Wortley Aff. ¶ 13.)  There is no genuine issue of triable fact concerning Defendant Freeman's alleged deliberate indifference to Plaintiff's medical needs.

IV.    **PLAINTIFF'S CLAIM AGAINST DEFENDANT FREEMAN IS BARRED BY SOVEREIGN IMMUNITY.**

Plaintiff's claim that Defendant Freeman, as the former Warden of Taylorville, instituted a policy, pattern, and practice of delaying treatment for inmates under his care is barred by the Eleventh Amendment because the claim is in actuality an official capacity claim.  A claim that a duty attaches to any occupant of an official office, rather than that occupant committed a tort independent of the office, is a suit against the occupant in his official capacity.  Walker v. Rowe, 791 F.2d 507, 508 (7th Cir. 1986).  Plaintiff appears to allege that Defendant Freeman had a duty to implement a more effective system to provide medical treatment to Plaintiff.  No allegation is made that Defendant Freeman had personal knowledge of the allegedly inadequate medical care provided to Plaintiff.  Because Plaintiff attempts to bring suit against Defendant Freeman in his official capacity, Defendant Freeman is entitled to judgment as a matter of law.

V.    **DEFENDANT FREEMAN IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW DID NOT PUT HIM ON NOTICE THAT HIS CONDUCT WOULD BE CLEARLY UNLAWFUL.**

The doctrine of qualified immunity shields government officials from liability for civil damages on account of their performance of discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Knox v. McGinnis, 998 F.2d 1405, 1409 (7th Cir. 1993).  A court required to rule upon qualified immunity of a government official must first determine whether a favorable view of plaintiff's alleged facts show that the official's conduct violated a constitutional right, and, if they have, to determine whether the applicable constitutional standards were clearly

established at the time the events took place. Saucier v. Katz, 533 U.S. 194, 200 (2001); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). Qualified immunity can only be claimed by government officials whose conduct complained of was taken under the official's "discretionary," rather than "ministerial," functions. Harlow, 475 U.S. at 818; Davis v. Scherer, 468 U.S. 183, 196 (1984). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202. Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong. See Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988); Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

To the extent Plaintiff brings suit against Defendant Freeman in his individual capacity, Defendant Freeman is protected from liability by qualified immunity. Defendant Freeman has shown that the treatment of Plaintiff's medical condition does not give rise to an Eighth Amendment violation. In order to overcome Defendant Freeman's qualified immunity defense, Plaintiff would have to show, not only that he was entitled to a particular treatment for his medical complaints, but that Defendant Freeman would have been on notice that the failure to provide such treatment would violate the Constitution. There is nothing showing that he acted or failed to act despite having knowledge of a substantial risk of serious harm. See Jones, 193 F.3d at 490. A ruling against Defendant Freeman would represent an announcement of new law of which Defendant Freeman could not have been aware at the time he took the alleged actions. Because the law did not put

Defendant Freeman on notice that his conduct would be clearly unlawful, Defendant Freeman is entitled to qualified immunity.

## **CONCLUSION**

WHEREFORE, for the above and foregoing reasons, Defendant Freeman respectfully requests this Honorable Court to grant his Motion for Summary Judgment.

Respectfully submitted,

DAVID FREEMAN,

Defendant,

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendant,

s/ Michael J. Lanzdorf
Michael J. Lanzdorf,  #6286675
Attorney for Defendant
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on _____, I electronically filed a Memorandum of Law

in Support of Defendant Freeman's Motion for Summary Judgment with the Clerk of the

Court using the CM/ECF system which will send notification of such filings to the following:

Michael J. Costello / Email: costello.M@sbcglobal.net
Theresa M. Powell / Email: tpowell@hrva.com

Respectfully submitted,

   s/   Michael Lanzdorf
Michael J. Lanzdorf,  #6286675
Attorney for Defendant
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

STATE OF ILLINOIS            )            *Herrick v. Freeman, et al.,*
                             )ss.         Case No. 06-3137
COUNTY OF CHRISTIAN          )

## AFFIDAVIT

I, **David Freeman**, being first duly sworn upon oath, state that I have

personal knowledge of the facts set forth herein, that I am competent to testify

and if called to testify would state as follows:

1.      I served as Warden of the Taylorville Correctional Center until

February 15, 2004. I am no longer employed by the Illinois Department of

Corrections.

FURTHER AFFIANT SAYETH NOT.

_____
David Freeman

SUBSCRIBED and SWORN to
before me this 11th day of October 2006.
_____
Notary Public

OFFICIAL SEAL
DIANA M. DESALLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-14-2007

EXHIBIT
A

STATE OF ILLINOIS          )          *Herrick v. Freeman, et al.,*
                           )ss.        Case No. 06-3137
COUNTY OF SANGAMON         )

### AFFIDAVIT

I, **Melody Ford**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.     I am a Chairperson with the Office of Inmate Issues for the Illinois Department of Corrections ("the Department") and have held this position since August 1, 2001. I have been employed by the Department in various capacities since June 1993. As an Administrative Review Board ("ARB") Chairperson, my duties involve, among other things, reviewing and responding to grievances filed by Department inmates in the manner set forth herein.

2.     Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The Grievance Officer may personally interview the inmate and/or witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the Grievance Officer's conclusions and,



EXHIBIT
B

if appropriate, recommended relief, is forwarded to the CAO. The CAO or CAO's designee's decision is then submitted to the grieving inmate.

3.      If, after receiving the CAO's decision, the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and, at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendation to the Director or Director's designee, who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB files. Department Rule 504F: Grievance Procedures for Committed Persons provides no further means for review beyond this step.

4.      Certain issues may be grieved directly to the ARB, rather than first through a counselor or grievance officer. These issues include:

a.      Decisions involving the involuntary administration of psychotropic medication;

b.      Decisions regarding protective custody placement, including continued placement in or release from protective custody;

c.    Decisions regarding disciplinary proceedings which were made at a

facility other than the facility where the inmate is currently assigned;

and

d.    Other issues except personal property issues which pertain to a

facility other than the facility where the inmate is currently assigned.

These grievances are then handled in accordance with the procedures

described in paragraph 3 above.

5.    An inmate may request a grievance be handled on an emergency

basis by forwarding the grievance directly to the CAO rather than to a counselor

or grievance officer.  If the CAO determines that there is a substantial risk of

imminent personal injury or other serious or irreparable harm to the inmate, the

grievance may be handled on an emergency basis.  An inmate may appeal the

CAO's decision in such a situation to the ARB.  The appeal is then handled in

accordance with the procedure described in paragraph 3 above.

6.    The grievance procedure may not be utilized for complaints

regarding decisions which are outside the Department's authority such as parole

decisions, clemency or orders regarding the length of sentences or decisions

which have been reviewed by the Director.

7.    At the request of the Attorney General's Office, I have searched the

ARB's records in regards to Inmate Justin Herrick, Register number K91865, and

found the following: A review of ARB records indicate that Justin Herrick,

K91865, did not submit any grievances in accordance with departmental rule 504

regarding the medical treatment he received concerning a knee injury sustained

in July 2003.

FURTHER AFFIANT SAYETH NOT.

Melody Ford

SUBSCRIBED and SWORN to
before me this _12th_ day of _October_ 2006.

Notary Public

OFFICIAL SEAL
**SARA M. MC DANIEL**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-23-2008