## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| JUSTIN HERRICK, | ) |
| Plaintiff, | ) |
| -vs- | ) No. 06-3137 |
| DAVID FREEMAN, GREGORY SIMS, ADAM McDOWELL, GLENDA WORTLEY, DR. AHMED and DR. LOCKHART, | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendants, DAVID FREEMAN, ADAM McDOWELL, GREGORY SIMS, and GLENDA WORTLEY, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), state as follows:

### INTRODUCTION

Plaintiff, Justin Herrick, is an inmate in the custody of the Illinois Department of Corrections (the "Department") at Taylorville Correctional Center ("Taylorville"). On June 30, 2006, Plaintiff filed a 42 U.S.C. § 1983 suit, in which he alleges that various current and former prison officials and contractual healthcare providers were deliberately indifferent to his medical needs. On February 29, 2008, District Judge Baker concluded that Plaintiff failed to exhaust his administrative remedies as to all claims arising from occurrences that Plaintiff discovered more than 60 days before April 25, 2005. (Ct. Doc. #51.) Therefore, Plaintiff's claims are limited to the following: (i) that in mid-February 2005, after corresponding with healthcare about his brace, Plaintiff received a neoprene brace but not the brace recommended by Dr. Trice; (ii) on March 11, 2005, Plaintiff was to have a 26 week check-up with Dr. Trice which did not occur;

and (iii) Defendants refused to permit the Plaintiff to see the orthopedic specialist and, on April 17, 2005, Dr. Ahmed examined the Plaintiff's knee in a perfunctory manner and advised that it was alright. (Ct. Doc. #1, ¶¶ 21-23.) Defendants renew their Motion for Summary Judgment on the following grounds. *First*, there is insufficient evidence for a rational jury to find that Defendants were deliberately indifferent to Plaintiff's serious medical needs. *Second*, Defendants are entitled to qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may discharge this burden by "showing . . . an absence of evidence to support the nonmoving party's case." Id., 477 U.S. at 325. When the moving party has met the burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250. In determining whether the nonmovant has identified a "material" issue of fact for trial, "[o]nly dispute[s] that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996). A court must enter summary judgment against the plaintiff when the plaintiff fails to come forward with evidence that would reasonably permit a finder of fact to find in plaintiff's favor on a material question. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

## UNDISPUTED MATERIAL FACTS

1.   Plaintiff suffered a knee injury in July 2003 while incarcerated at Taylorville. (Compl. at 9.)

2.	On July 6, 2004, Dr. Hughes Lochard referred Plaintiff to Dr. Michael Trice, an orthopedic surgeon, for an outside consultation. (Compl. at 15.)

3.	On September 10, 2004, Plaintiff was admitted to Decatur Memorial Hospital for surgical repair of his anterior cruciate ligament ("ACL"). (See Wortley Aff. ¶ 10, previously attached to Ct. Doc. #19.)

4.	Plaintiff returned to Taylorville on September 12, 2004, with a brace provided by the hospital and orders to perform range of motion ("ROM") exercises. (See Wortley Aff. ¶ 10, attached to Ct. Doc. #19.)

5.	Plaintiff conferred with Dr. Trice on October 14, 2004, (Compl. at 17) and was later seen by a physical therapist at Taylorville, who recommended that Plaintiff begin rehabilitative exercises on his own. (See Wortley Aff. ¶ 11, attached to Ct. Doc. #19.)

6.	Plaintiff was allowed to engage in further rehabilitative exercises by using a stationary bike at Taylorville that was donated to the facility by Plaintiff's mother. (See Wortley Aff. ¶ 11, attached to Ct. Doc. #19.)

7.	Plaintiff was allowed to confer with Dr. Trice on two separate occasions in December 2004. (Compl. at 19-20.)

8.	Requests for outside referrals and consultation are reviewed through a utilization process for approval and it is the responsibility of the designated physician to make the initial recommendation. (Defs.' Ex. A; Wortley Aff., ¶ 2, attached hereto).

9.	The Utilization Review conferred with Dr. Trice and had a non-metal brace approved by him which was thereafter issued to Plaintiff on February 21, 2005. (Defs.' Ex. A; Wortley Aff., ¶ 4.)

10.	A metal brace was not provided because the metal could potentially be used as a weapon. (Defs.' Ex. A; Wortley Aff., ¶ 4.)

11.	Plaintiff was examined by a treating physician at Taylorville on April 17, 2005, and June 16, 2005. (Defs.' Ex. A; Wortley Aff., ¶ 5.)

12. During Plaintiff's incarceration at Taylorville, he has received treatment that was medically indicated. (Defs.' Ex. A; Wortley Aff., ¶ 6.)

13. Defendant Wortley, as the Healthcare Unit Administrator, has no authority to override the decisions made by the medical staff and she is not aware of any refusal by the medical staff to provide treatment to Plaintiff. (Defs.' Ex. A; Wortley Aff., ¶ 6.)

14. Defendant Wortley is not aware of any refusal by Plaintiff's treating physician to make necessary recommendations to the Utilization Review concerning Plaintiff's requests for outside referrals and consultation. (Defs.' Ex. A; Wortley Aff., ¶ 6.)

15. Defendant Freeman served as Warden at Taylorville until February 2004. Defendant Freeman is no longer employed by the Department. (See Freeman Aff. ¶ 1, previously attached to Ct. Doc. #25.)

16. Defendant Sims is the Warden at Taylorville and has held this position since February 2, 2004. (Defs.' Ex. B; Sims Aff., ¶ 1, attached hereto.)

17. As Warden, Defendant Sims relies upon a staff of licensed health care personnel who are supervised by a physician to provide appropriate health care treatment. Defendant Sims has no medical training. (Defs.' Ex. B; Sims Aff., ¶ 5.)

18. Defendant Sims did not personally review or personally make the final decision concerning Plaintiff's grievance dated April 28, 2005. Rather, the grievance was reviewed and signed by Defendant Sims' designee, Julie Hardway-Nickles. (Defs.' Ex. B; Sims Aff., ¶ 4.)

19. Defendant Sims has had no personal involvement in the diagnosis, treatment or medical care that Plaintiff has received at Taylorville nor is he aware of any refusal by the medical staff to provide needed treatment to Plaintiff. (Defs.' Ex. B; Sims Aff., ¶ 5.)

20. Defendant McDowell, a grievance officer at Taylorville, investigated Plaintiff's claims and recommended denial of Plaintiff's grievance based on information provided by Defendant Wortley. Based upon information provided by Defendant Wortley, Defendant McDowell reported that: "Offender Herrick received surgery for the repair of his ACL. He also

had physical therapy after the surgery and a brace to do exercises. Range of motion is intact and ambulates without assistance. He was last seen on 4/16/05 by the doctor here at the facility and is to have a follow-up at the end of this month (May 05). He has not been to health care at all since he saw the doctor. She states he had a referral, saw an orthopedist, had surgery, had physical therapy and continues to be followed for this issue. She states that there is no negligence and no indifference to his medical issue." (Defs.' Ex. B; Sims Aff., Ex. 1.)

## ARGUMENT

### I. THERE IS INSUFFICIENT EVIDENCE FOR A RATIONAL JURY TO FIND THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." Id. at 106; see also Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1986) (mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amount to deliberate indifference. See Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, prisoners must demonstrate that their medical need is "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Under the subjective component, prisoners must demonstrate that prison officials acted with a "'sufficiently culpable

state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). In other words, prison officials must act or fail to act despite their knowledge of a substantial risk of serious harm. Jones v. Simek, 193 F.3d 485, 490 (7th Cir. 1999).

### A.  Defendants Freeman and Sims

Defendants in a suit brought pursuant to 42 U.S.C. §1983 can only be held liable for their individual wrongdoing. Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of the plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation. Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). Simply sending letters to a warden or prison director does not establish personal involvement. Thornton v. Snyder, 2006 WL 898136, at 2 (C.D. Ill. 2006); see also Diaz v. McBride, 1994 WL 750707, at 4 (N.D. Ind. 1994) (holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under Section 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates)

Neither Defendant Freeman nor Defendant Sims participated in the events at question in Plaintiff's lawsuit and therefore lack the required personal involvement. The Court determined that Plaintiff's claims are limited to those which are alleged to have occurred beginning 60 days before April 25, 2005. However, Defendant Freeman served as Warden at Taylorville only up until February 2004. (Undisputed Material Fact No. 15.) Likewise, Defendant Sims had no personal involvement in the diagnosis, treatment or medical care that Plaintiff received nor is he aware of any refusal by the medical staff to provide needed treatment to Plaintiff. (Undisputed Material Fact No. 19.) As Warden, Defendant Sims relies upon a staff of licensed health care personnel who are supervised by a physician to provide appropriate health care treatment. (Undisputed Material Fact No. 17.) Defendant Sims did not personally review or personally make the final decision concerning Plaintiff's grievance dated

April 28, 2005. (Undisputed Material Fact No. 18.) Rather, the grievance was reviewed and signed by Defendant Sims' designee, Julie Hardway-Nickles. (Undisputed Material Fact No. 18.) There is no basis for Plaintiff's allegation that Defendants Freeman and Sims had any specific knowledge of Plaintiff's complaints. Accordingly, Defendants Freeman and Sims are entitled to summary judgment in this matter. See Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006) (summary judgment for prison official warranted where there was no evidence that he personally read any of the plaintiff's communications or had any subjective awareness of the plaintiff's condition).

### B.   Defendant McDowell

Typically, prison officials with no medical training are entitled to rely on the treating physician's decisions. "[I]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands..." Greeno, 414 F.3d at 656; see also Bond v. Aguinaldo, 228 F.Supp. 2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (other citations omitted).

It appears that Plaintiff brings suit against Defendant McDowell solely because of his alleged failure to respond appropriately to Plaintiff's grievance. Defendant McDowell, a grievance officer at Taylorville, is not a health care professional. (Undisputed Material Fact No. 20.) Defendant McDowell investigated Plaintiff's claims and recommended denial of Plaintiff's grievance, dated April 28, 2005, based on information provided by Defendant Wortley indicating that Plaintiff's medical needs were being adequately addressed. (Undisputed Material Fact No. 20.) There is insufficient evidence for a rational jury to find that Defendant McDowell acted or failed to act with a culpable state of mind. Accordingly, Defendant McDowell is entitled to summary judgment in this matter.

### C. Defendant Wortley

Plaintiff's claims against Defendant Wortley begin in mid-February 2005. Specifically, Plaintiff contends that he was impermissibly denied the brace recommended by Dr. Trice and that he was denied the opportunity to see the orthopedic specialist. (Ct. Doc. #1, ¶¶ 21-23.) Defendant Wortley, as the Healthcare Unit Administrator, has no authority to override the decisions made by the medical staff and she is not aware of any refusal by the medical staff to provide treatment to Plaintiff. (Undisputed Material Fact No. 13.) Plaintiff was not provided a metal brace because the metal could potentially be used as a weapon. (Undisputed Material Fact No. 10.) Instead, he was provided a non-metal brace which had been approved by Dr. Trice. (Undisputed Material Fact No. 9.) Plaintiff's claims against Defendant Wortley concerning being denied the opportunity to see the orthopedic specialist are similarly without merit. Requests for outside referrals and consultation are reviewed through a utilization process for approval and it is the responsibility of the designated physician to make the initial recommendation. (Undisputed Material Fact No. 8.) Defendant Wortley is not aware of any refusal by Plaintiff's treating physician to make necessary recommendations to the Utilization Review concerning Plaintiff's requests for outside referrals and consultation. (Undisputed Material Fact No. 14.) Plaintiff was allowed to see an Orthopedist on numerous occasions and Plaintiff had surgery performed on his ACL. (Undisputed Material Facts No. 2-3, and 7.) Because Plaintiff was under the care of a licensed physician for all relevant times (Undisputed Material Fact No. 11), there is insufficient evidence for a rational jury to find that Defendant Wortley acted or failed to act with a sufficiently culpable state of mind. Accordingly, Defendant Wortley is entitled to summary judgment in this matter.

### II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW DID NOT PUT THEM ON NOTICE THAT THEIR CONDUCT WOULD BE CLEARLY UNLAWFUL.

The doctrine of qualified immunity shields government officials from liability for civil damages on account of their performance of discretionary functions insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Knox v. McGinnis, 998 F.2d 1405, 1409 (7th Cir. 1993). A court required to rule upon qualified immunity of a government official must first determine whether a favorable view of plaintiff's alleged facts show that the official's conduct violated a constitutional right, and, if they have, to determine whether the applicable constitutional standards were clearly established at the time the events took place. Saucier v. Katz, 533 U.S. 194, 200 (2001); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). Qualified immunity can only be claimed by government officials whose conduct complained of was taken under the official's "discretionary," rather than "ministerial," functions. Harlow, 475 U.S. at 818; Davis v. Scherer, 468 U.S. 183, 196 (1984). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202. Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong. See Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988); Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

In the present case, the Defendants are entitled to qualified immunity. The law at the time of Defendants' actions could not have alerted them that their actions were improper or unlawful. In order to overcome Defendants' qualified immunity defense, Plaintiff would have to show, not only that he was entitled to a particular treatment for his medical complaints, but that Defendants would have been on notice that the failure to provide such treatment would violate the Constitution. There is nothing showing that Defendants acted or failed to act despite having knowledge of a substantial risk of serious harm. See Jones, 193 F.3d at 490. A ruling against Defendants would represent an announcement of new law of which they could not have

been aware at the time they took the alleged actions. Because the law did not put Defendants on notice that their conduct would be clearly unlawful, Defendants are entitled to qualified immunity.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

DAVID FREEMAN, ADAM McDOWELL,
GREGORY SIMS, and GLENDA WORTLEY,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendants,


   s/ Michael J. Lanzdorf
Michael J. Lanzdorf,  #6286675
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |  |
|---|---|---|
| JUSTIN HERRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 06-3137 |
| | ) | |
| DAVID FREEMAN, GREGORY SIMS, ADAM McDOWELL, GLENDA WORTLEY, DR. AHMED and DR. LOCKHART, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2008, I electronically filed the foregoing Memorandum in Support of Defendants' Renewed Motion for Summary Judgment, with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Michael J. Costello / Email: costello.M@sbcglobal.net
Theresa M. Powell / Email: tpowell@hrva.com

Respectfully submitted,

  s/   Michael Lanzdorf
Michael J. Lanzdorf, #6286675
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: mlanzdorf@atg.state.il.us

E-FILED
Friday, 28 March, 2008  11:35:43 AM
Clerk, U.S. District Court, ILCD

| STATE OF ILLINOIS | ) | *Herrick v. Freeman, et al.* |
|---|---|---|
|  | ) | USDC-CD Ill. No. 06-3137 |
| COUNTY OF CHRISTIAN | ) |  |

### AFFIDAVIT

I, **Glenda Wortley**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify, would state as follows:

1. I am the Health Care Unit Administrator at Taylorville Correctional Center ("Taylorville") and have held this position since August 2000.

2. As a Health Care Unit Administrator, my job responsibilities are to direct, coordinate and review activities of the healthcare operations in conjuncture with the Medical Director. Because I am not a physician, final medical treatment is with the designated physician. I have no authority to order treatment for any inmate at any time. Requests for outside referrals and consultation are reviewed through a utilization process for approval and it is the responsibility of the designated physician to make the initial recommendation.

3. I have reviewed the medical issues concerning Inmate Justin Herrick, K91865, for the period of February 2005 through June 2005. I find the following from his medical records:

4. Metal is avoided in Taylorville because it could potentially be used as a weapon. The Utilization Review conferred with Dr. Michael Trice, an orthopedic surgeon, and had a non-metal brace approved by him which was thereafter issued to Mr. Herrick on February 21, 2005. (See attached Ex. 1.)

5. Mr. Herrick was examined by a treating physician at Taylorville on April 17, 2005, and June 16, 2005.


EXHIBIT A

6. During Mr. Herrick's incarceration at Taylorville, he has received treatment that was medically indicated. I have no authority to override the decisions made by the medical staff and I am not aware of any refusal by the medical staff to provide needed treatment to Mr. Herrick. Likewise, I am not aware of any refusal by Mr. Herrick's treating physician to make necessary recommendations to the Utilization Review concerning Mr. Herrick's requests for outside referrals and consultation.

FURTHER AFFIANT SAYETH NOT.

Glenda Wortley

Subscribed and sworn to me this 26th day of March 2008.

Paula R Murray
Notary Public

"OFFICIAL SEAL"
PAULA R. MURRAY
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-20-2008

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

Taylorville Correctional Center

Offender Information:

Last Name: Herrick    First Name: Justin    MI:    ID#: K41865

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 1/28/05 1000 | DON Note. Talked c̄ Sharon @ HPL about brace. She is talking c̄ Dr. True about a brace from Moore Medical. | RBalderson |
| 2/10/05 1300 | DON Note. Talked c̄ Sharon and Dr. True okay brace and it is being ordered. | RBalderson |
| 2/21/05 1120 | DON Note. Issued knee brace to Mr Herrick Ergodyne sleeve #620. | RBalderson |
| 4/7/05 1:32 PM | MD NOTE  Wt 167 lbs 97.8 140/85 80 18  Reason. F/u (3mo) ® thigh  S— wants lump on Rt. thigh taken out. wants Rt. knee rev'ed | [knowledge p. 805]  1 — Observe  2 F/u 3 mo in 6 wks.  3) pt advised about plan of care, of indication & to plan. |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

Taylorville Correctional Center

Offender Information:
Last Name: HERRICK
First Name: USTIN
MI:
ID#: K91865

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/16/05 12:25 pm | MD note<br>O - Alert & oriented x3<br>- Rt. thigh lipoma<br>- Rt. knee c̄ no acute effusion<br>ROM intact, pt ambulators c̄<br>out assistance to outcomes.<br>1) Lipoma → no surgery indicated<br>2) s/p old Rt. knee ACL repair<br>pt. stable | P/-<br>pt advised above<br>findings<br>(F. Anderson, MD) |
| 6/2/05 10:02 pm | MD NOTE<br>Wt 165 lbs 97.6 142/86 82 18<br>Reason: Request for possible<br>referral d/t Knee | JM |

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Herrick v. Freeman, et al.* |
| | ) ss. | USDC-CD Ill. No. 06-3137 |
| COUNTY OF CHRISTIAN | ) | |

## AFFIDAVIT

I, **Greg Sims**, being first duly sworn upon oath, depose and state that:

1. I am employed as the Warden at Taylorville Correctional Center ("Taylorville") and have held this position since February 2, 2004.

2. As Warden at Taylorville, I am responsible for the overall administration of the operations of the institution, including fiscal management, personnel, security of the facility, and the delivery of programs and services to the offenders confined at Taylorville. I also plan and approve the facility's fiscal budget and formulate policy, procedures, rules, regulations and institutional directives for employees and offenders. Taylorville is a minimum-security facility, housing approximately 1,193 adult offenders and employing approximately 247 persons.

4. I have reviewed an April 28, 2005 grievance written by Offender Justin Herrick, #K91865. (See attached Ex. 1). Mr. Herrick's April 28, 2005 grievance contains a signature purported to be mine. Said signature is dated May 12, 2005. (Ex. 1.) I did not sign my name to the April 28, 2005 grievance. Instead, I gave my signature authority to Julie Hardway-Nickles. The grievance went through the normal grievance process whereupon my designee, Julie Hardway-Nickles, would have reviewed the grievance and signed my name in the Chief Administrative Officer's Response section of the grievance concurring with the Grievance Officer's recommendation. (Ex. 1.) Therefore, I did not personally review or personally make the final decision concerning Mr. Herrick's April 28, 2005 grievance.

5. As Warden at Taylorville, I rely upon my staff of licensed health care personnel who are supervised by a physician to provide appropriate health care


EXHIBIT B

treatment. I have no medical training. To my knowledge, all inmates receive all treatment that is medically indicated. In addition, I can attest to the attentiveness of Health Care Unit Administrator Glenda Wortley in directing, coordinating, and reviewing the activities of the health care operations at Taylorville. I have had no personal involvement in the diagnosis, treatment or medical care that Offender Justin Herrick, #K91865, has received at Taylorville. I am not aware of any refusal by the medical staff to provide needed treatment to Offender Justin Herrick.

FURTHER AFFIANT SAYETH NOT.

_____
Greg Sims

SUBSCRIBED and SWORN to
before me this 26th day of March, 2008.

_____
Notary Public

"OFFICIAL SEAL"
PAULA R. MURRAY
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-25-2008

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

| Date: 4/28/05 | Committed Person: (Please Print) Justin Herrick | ID#: K91865 |
|---|---|---|
| Present Facility: Taylorville CC | Facility where grievance issue occurred: Taylorville CC | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___/___/___  Date of Report _____ Facility where Issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On 7/1/03 I injured my right knee playing soccer. I saw Healthcare and Dr. Lockhart ordered x-rays which were done 7/5/03. Dr. Lockhart told me it was arthritis, ibuprofen and crutches were prescribed. I was on crutches for about 2 weeks and healthcare took them back. I went back to see the doctor on 7/9/03, 7/24/03, 8/4/03, 12/26/03 and complained of severe continuing pain and swelling localized about ACL (anterior cruciate ligament) and the inner ligament (medial meniscus). Ibuprofen was prescribed but I told the doctor the pain was not helped by the ibuprofen (nor was it). In October of 2003 I had complained to Glenda Wortley about Dr. Lockhart's refusal to schedule me for a specialist or for an MRI since my knee was not

**Relief Requested:** I want compensatory and punitive damages for my permanent disabilit caused by negligent and/or deliberate indifference medical care and referral for therapy and to the specialist as he orders.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Committed Person's Signature  ID# K91865   Date 4/28/05
(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

Date Received: 5/3/05
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Reviewed grievance. Conferred w/ HCU/infirmary staff. Inmate appears to have received adequate medical care including an orthopedic specialist and care associated w/ visit. Grievance denied @ this level.

R Evans, CCII   Print Counselor's Name
R Evans   Counselor's Signature   5/3/05

### EMERGENCY REVIEW

Date Received: ___/___/___   Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

#6345  MAY 2005  LEAD

Chief Administrative Officer's Signature   Date

EXHIBIT 1

ILLINOIS DEPARTMENT OF CORRECTIONS
COMMITTED PERSON'S GRIEVANCE (Continued)

healing and it was just like when I had previously injured the same knee. On 4/23/04 I again went to Ms. Wortley complaining of Dr. Lockhart's inaction but she said there was no way to go against the doctor's opinion, since the so-called medical review committee was chaired by the doctor and he "never" overruled his own decisions. On 6/8/04 I again complained to Dr. Lockhart about my failure to heal, the continuing severe pain, the swelling, the pain at night where I could not sleep. I saw him again of 7/2/04 and restated my above complaints. Finally, on 7/6/04 I was referred to orthopedist Dr. Trice of Decatur Memorial Hospital and I had an MRI performed on 7/15/04. I saw Dr. Trice and followed up and he told me I had a torn ACL possible meniscus damage and ordered me for surgery in September of 2004. Surgery was done on 9/10/04 as above specified and on 10/14/04 I again saw Dr. Trice who prescribed physical therapy. On 11/9/04 I saw the therapist here who recommended that he see once a week for several weeks but I never saw him again. On 12/02/04 I saw Dr. Trice who fitted me for an ACL brace (Briggs -manufacturer). On 12/16/04 I saw DR. Trice again and I was told I could not receive a Briggs ACL brace because it had metal structures in it. In mid-February, after writing to Healthcare about my brace, and I finally received a neoprene brace, not the one recommended by Dr. Trice. On march 11, 2005 I was supposed to have a 26 week checkup by Dr. Trice which I did not. They still have refused to cause me to see the orthopedic specialist, but on 4/17/05 Dr. Ahmed who did a very perfunctory look at my knee and said "it's ok".

The delay in sending me to a specialist was deliberate indifference to my serious medical needs in violation of the 8th Amendment to the U.S. Constitution. In addition, it was negligent for Dr. Lockhart and Glenda Wortley not to send me to a specialist since everyone knows an x-ray does not show the ligaments etc. for a torn ACL/meniscus diagnosis. There is a continuing pattern and practice here at taylorville of delaying and denying inmates proper access to medical care, treatment, and diagnostic testing, physical therapy, and proper rehabilitative bracing. I have suffered a severe loss of the opportunity to recover because of the delay and deliberate attempts to save money by preventing access to healthcare. We all know if it was a C/O or warden who hurt his knee there would not be several months delay in giving an MRI. I am also complaining about the lack of investigation that Ms. Wortley, did not do, when I complained of my knee injury and failure to treat same. I feel I deserve several tens of thousands of compensation for the pain, suffering, and permanent disability. I can never work as a roofer or probably in any labor trade because of my injury. Plus, I have heard Wexford Healthcare has a pattern and practice of delaying treatment for inmates in all prisons where Wexford was used, and the warden must haveknown this because it was in the newspapers. Now, the same pattern appears for the new provider.

ILLINOIS DEPARTMENT OF CORRECTIONS     DOC 0047
**RESPONSE TO OFFENDER'S GRIEVANCE**

### GRIEVANCE OFFICER'S REPORT

Date Received: 05/05/05    Date of Review: 05/12/05    Grievance # (Optional): 6345

Offender: Herrick, Justin    ID #: K91865

**Nature of Grievance:** Offender Herrick is grieving the medical treatment he received concerning a knee injury he sustained in July of 2003. He claims "deliberate indifference" toward medical staff concerning his condition.

**Facts Reviewed:** Contacted Glenda Wortley, HCU Administrator concerning the matter, she stated the following. Offender Herrick received surgery for the repair of his ACL. He also had physical therapy after the surgery and a brace to do exercises. Range of motion is intact and ambulates without assistance. He was last seen on 4/16/05 by the doctor here at the facility and is to have a follow-up at the end of this month (May 05). He has not been to health care at all since he saw the doctor. She states he had a referral, saw an orthopedist, had surgery, had physical therapy and continues to be followed for this issue. She states that there is no negligence and no indifference to his medical issue.

**Recommendations:** Due to information received by HCU Administrator this grievance officer, A. McDowell, recommends denial of the grievance. It is recommended that any further medical concerns of the grievance be addressed via Nurse Sick Call.

Adam McDowell CCII     cc II A. McDowell
Print Grievance Officer's Name     Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: 5/12/05    [X] I concur    [ ] I do not concur    [ ] Remand

Chief Administrative Officer's Signature     5/12/05 Date

### OFFENDER'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature     ID#     Date

Distribution: Original to Master File    A/W Operations    Other: _____
CC: Offender - Date Received 5/12/05    A/W Programs
     Warden    Inquiry Board

DOC 0047 (Eff. 3/2005)

Page 1